MARY WAYLAND v. KANSAS CITY ET AL., Plaintiffs in Error.—12 S. W. (2d) 438.

Division Two, December 18, 1928.

*Marcy K. Brown, Jr.,* and *W. D. Bush* for plaintiffs in error.

656

BLAIR, J.—Error to the Circuit Court of Jackson County in two cases, which were consolidated in the trial court. Each case involved the validity of the judgment in a condemnation suit in favor of Kansas City against lots 3, 4 and 5, in block 6, in William Parish's Subdivision in and to Kansas City, Missouri. The amount of said judgment, with interest accrued thereon from date of rendition to date of the judgment of the trial court in the cases at bar, fixes our appellate jurisdiction.

On April 19, 1913, Kansas City secured a judgment in the Circuit Court of Jackson County for benefit assessments for the extension of Linwood Boulevard, as follows: Against lot 3, $1,291.83; against lot 4, $1,470.36, and against lot 5, $1,470.36. Judgments against other lots and parcels of land were rendered in the same proceeding.

On March 12, 1923, which was within ten years after rendition of such judgment, defendant in error filed suit against Kansas City (plaintiff in error) in the Circuit Court of Jackson County (case No. 185,153). Her petition alleged that she was the owner of said lots; that on April 19, 1913, Kansas City obtained a judgment against said lots for the purpose and in the sums aforesaid, that said judgment had been paid and that satisfaction should be entered of record. The prayer was that the court should cancel said judgment and enter satisfaction of record thereon.

On March 23, 1923, the Clerk of the Circuit Court of Jackson County issued and delivered to Fred A. Richardson, sheriff of said county, a special execution on said judgment against the lots here involved and other real estate. Thereupon said sheriff levied upon said lots and advertised them for sale on May 2, 1923. On May 1, 1923, defendant in error filed suit in the Circuit Court of Jackson County against Kansas City and Sheriff Richardson. This was case No. 186,348. The petition recited the facts about the rendition of the judgment of April 19, 1913, the insurance of execution thereon and the levy upon and advertised sale of said lots. It was alleged

that said judgment had not been revived and was conclusively presumed to be paid and was no longer a lien against said lots; that the sheriff had no right to sell said lots under the special execution issued on said judgment, which he was about to do. The prayer of the petition was for an injunction to prevent said sheriff from selling said lots.

Thus there were two cases pending—one to have the judgment of April 19, 1913, canceled and satisfied of record, and the other to enjoin the sale of the lots under execution issued on said judgment. By agreement the two cases were consolidated and tried together. On November 24, 1923, the Circuit Court of Jackson County made a finding that no payment had ever been made on the judgment of April 19, 1913, and that the same had never been revived and that, under the laws of the State, said judgment was conclusively presumed to have been paid and satisfied and that said judgment was not a lien against said lots at the time of the attempted sale of said lots under the special execution issued thereon. Accordingly, the trial court rendered its judgment whereby said special execution was quashed and defendant Kansas City and Sheriff Richardson were perpetually enjoined from proceeding to sell said lots under said special execution.

On November 15, 1924, which was within one year after said judgment of November 24, 1924, was rendered, defendant Kansas City, as plaintiff in error, petitioned for and sued out of this court its writ of error in said consolidated cases. Notice of the issuance of such writ of error was timely served on defendant in error by said city as plaintiff in error.

Defendant in error has filed her motion to quash the writ of error, and the disposition of said motion is the first question for consideration. The grounds of the motion are, first, that only one of the two defendants below has joined in the issuance of the writ of error and only one has served the statutory notice upon defendant in error and, second, that no motion for new trial was filed below and only the record proper is before this court and the writ should be quashed because no errors appear on the face of such record proper. The last ground of the motion goes to the merits of the case and will be considered later, if we conclude that plaintiff in error is properly in court on its writ of error.

Sheriff Richardson, who was a party defendant in the injunction suit below, is still living, of sound mind and a resident of this State, according to the allegations of the motion to quash, and did not join in the petition for or the issuance of the writ of error or in the notice to defendant in error of such issuance. Defendant in error contends that such non-joinder is fatal to the proceeding here and hence

the writ of error should be quashed. Section 1489, Revised Statutes 1919, is as follows:

"If there be several persons against whom any judgment shall have been recovered and entitled to bring a writ of error thereon, living at the time of bringing such writ, they shall all join in such writ, except where it is otherwise provided by law; and if any are omitted, the writ shall be quashed on motion of the defendant in error, made at any time before submission upon due proof of the facts by affidavits, unless one or more of such persons be allowed to proceed by the Supreme Court or Court of Appeals."

The only case cited by defendant in error is Kelmel v. Nine, 121 Mo. App. 718, l. c. 720, 97 S. W. 635. In that case a writ of error was sued out of the Kansas City Court of Appeals by only one of several defendants, against whom judgment was obtained in the circuit court. Defendant in error in that case filed her motion to dismiss the writ of error because the Court of Appeals had no appellate jurisdiction of the case, contending that it involved title to real estate, and because only one defendant joined in the writ of error and no notice of the issuance of such writ was served on defendant in error. The motion to dismiss was apparently sustained on all grounds. Among other things BROADDUS, P. J., said: "The writ will be quashed because only one of the defendants applied for the same and no reason assigned why the others have not joined in the application therefor." The nature of the interest in the land claimed by the defendants who did not join in the writ of error does not appear from the published opinion.

Section 1490, Revised Statutes 1919, authorizes the prosecution of a writ of error without joining as plaintiff in error one who is incapable of consenting to such joinder by reason of insanity or imbecility of mind or absence from the State. The Sheriff of Jackson County does not come within this exception; nor does it appear that he had refused to join in the writ of error, so that plaintiff in error could invoke the provisions of Sections 1491 to 1495, Revised Statutes 1919, inclusive, and bring him in as a party to the writ of error without his consent.

Plaintiff in error urges us to overrule the motion to dismiss the writ of error on the ground that the sheriff was a mere nominal party and was not "entitled to bring a writ of error" anyway. It does not appear why said sheriff was not entitled to appeal or to sue out a writ of error, since an adverse judgment with costs had been rendered against him. But, even if said sheriff was only a nominal party below, such fact does not bring him within the exceptions specified in Section 1490.

It would appear that the motion to dismiss should prevail, unless this court permits Kansas City to prosecute the writ alone, under

the last clause of Section 1489, which provides for dismissal for failure to join all of the parties affected by the judgment· ''unless one or more of such persons be allowed to proceed by the supreme court or courts of appeals.'' The manifest intent of the General Assembly in enacting such provision was to enable the appellate court to exercise its discretion so as to permit the writ to be prosecuted in proper cases by less than all the persons adversely affected by the judgment, even though such persons have been improperly omitted as parties to the writ, because they do not come within the exception specified in Section 1490, Revised Statutes 1919. This appears to be a proper case for the court to exercise such discretion. Sheriff Richardson had only an official, as distinguished from a personal, interest in the case. While he was not a mere nominal party to the injunction suit, he had no substantial interest in it outside of the possible loss of fees to be expected by him from the sale of the lots. He had no interest whatsoever in the judgment sought to be canceled in the suit consolidated with the injunction suit. Kansas City was the substantially interested party in both suits. Long before defendant in error filed its motion to dismiss the writ of error at our October term, 1928, Richardson had passed out of office as sheriff. To dismiss the writ at this time for failure to join him as a party plaintiff in error would tend to defeat rather than to further the ends of justice. In the exercise of the discretion thus imposed in us, we will allow Kansas City to proceed alone. This consideration also effectively disposes of another ground for dismissal of the writ, to-wit, that Sheriff Richardson served on defendant in error no notice of the issuance of our writ.

No motion for new trial was filed in the circuit court in the consolidated cases. Hence, only the record proper is before us. In case No. 185,153 in the trial court (cancellation suit), the petition alleged that the judgment of April 19, 1913, had been paid. In case No. 186,348 (injunction suit), the petition alleged that the judgment of April 19, 1913, had not been revived and was conclusively presumed to have been paid and no longer constituted a lien against the three lots described. In its judgment the trial court recited that the execution ''was issued upon a judgment obtained by the defendant Kansas City, Missouri, against said property on April 19th, 1913, that said judgment and the record does not show that any payment has ever been made on said judgment, has not been revived, and under the laws of this State it is conclusively presumed to have been paid and satisfied and that the lien created by said·judgment against said property has not been revived, and is not and was (not) at the time of the attempted sale of said property under said execution, a lien against said property.'' (Parenthetical correction ours.)

It therefore clearly appears from the record proper that said judgment of April 19, 1913, had not in fact been paid and that no payments whatever had been made thereon. It further appears from such record that the special execution was issued thereon and levy actually made on the lots here involved within ten years after the rendition of said judgment. However, the injunction suit was filed and the sale was advertised to be held more than ten years after the rendition of said judgment. In enjoining plaintiff in error and the sheriff from selling the lots under such special execution, the trial court, in view of the facts stated in its judgment, must have held that, although the ten year period had not elapsed and the judgment was not conclusively presumed to have been paid when the special execution issued, yet, the expiration of such ten-year period, after the issuance of such special execution and before sale thereunder, destroyed the lien created by the special execution and levy and took away the right of the sheriff to sell the property under such special execution, although it was a valid and enforceable execution when issued.

Section 1564, Revised Statutes 1919, provides that ''executions may issue upon a judgment at any time within ten years after the rendition of such judgment.'' Article XVIII of Chapter 12, on Civil Procedure, makes provision for the levy upon and sale of real estate and personal property of the judgment debtor to satisfy an execution issued upon a judgment. The various provisions of said article need not be recited, but they authorize the return of such execution as late as the second term of court after issuance thereof (Sec. 1606, R. S. 1919) and provide for numerous other steps, including levy upon and sale of the judgment debtor's property to be had after issuance and return of the execution. Considerable time must necessarily elapse between the issuance of an execution and the sale of real estate under such execution. If all these steps must be taken within the period of ten years from the rendition of the judgment, then Section 1564 must be construed as if it read: Execution may issue upon a judgment at any time within ten years after its rendition, but a sale under such execution must also be made within such ten year period. That is to say, that; when the Legislature said an execution could issue at any time within ten years after the rendition of the judgment, it did not mean ten years for the issuance of the execution, but meant ten years as the limit within which an execution creditor must realize the benefit from such execution. No such meaning can properly be gleaned from the language of Section 1564. When the Legislature said that an execution could issue at any time within ten years after the rendition of the judgment, it meant that an execution, with all subsequent proceedings usually attending thereon, could issue on the last day of the ten-year period

and be just as effective in respect to property seized under its levy as if such execution had issued immediately after the rendition of the judgment. As we construe Section 1564, the validity of a sale under the levy of an execution is not determined by the date of such sale, but by the date of the issuance of the execution under which such sale is had, provided such execution is valid in other respects.

We have been cited to no case squarely in point on the facts. Cases based on analogous situations fully support this conclusion. Where an execution issues while the judgment is a lien, the lien continues until the sale under execution has taken place, although the lien of the judgment would otherwise have expired in the meantime. [Bank v. Wells, 12 Mo. 361; Durrett v. Hulse, 67 Mo. 201; Riggs v. Goodrich, 74 Mo. 108; Huff v. Morton, 94 Mo. 405, 7 S. W. 283.]

Section 1557, Revised Statutes 1919, provides: "The plaintiff or his legal representative may, at any time within ten years, sue out a *scire facias* to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgment, no *scire facias* shall issue." In Goddard to use v. Delaney, 181 Mo. 564, 80 S. W. 886, it was held that, where *scire facias* issued within the ten-year period, a valid judgment of revival could be rendered thereon after the expiration of such ten-year period.

The whole theory of our statutes of limitations supports this conclusion. For example, Section 1305, Revised Statutes 1919, provides that no action for recovery of lands, etc., shall be "had or maintained" unless plaintiff or those under whom he claims were in possession of the land within ten years before the commencement of the action. If the action is commenced within ten years, no limitation can be placed upon the time during which such action may be "maintained." The same thing is true of other sections prescribing the limitation of actions of various sorts.

In Friel v. Alewel (Mo. Sup.), 298 S. W. 762, this division very recently had occasion to consider the validity of a sale, under the power of sale contained in a deed of trust, where the advertisement for the sale was commenced within the ten-year period of limitation specified in Section 1316, Revised Statutes 1919, but the sale did not take place until after such ten-year period had expired. Among other things, Section 1320, Revised Statutes 1919, as amended by Laws of 1921, at page 202, provides that "no suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, executed hereafter to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation of this State." In the Friel case, DAVIS, C., said:

"We are of the opinion that a 'proceeding under power of sale,' as used in the statute, means a course of action or procedure, re-

662

sulting in competent, orderly and continuous steps of procedure until the power of sale has been fully exercised in accordance with the statutes appertaining thereto. Plaintiffs argue, however, that the statute, prescribing that no proceeding shall be had or maintained after such obligation has been barred, forces the interpretation that every step in the foreclosure proceeding must have been exercised to toll the limitation statute. The word 'had' is there used in the sense of commenced or begun: . . . Construing it reasonably, the statute means that a suit or action may not be continued if it is not begun before the statute becomes a bar, but that.it may be continued to completion if begun within the period of the statute. The completion of the course of action, under foreclosure, culminating in a judgment, relates back and reverts to the commencement, resulting in the tolling of the statute. To interpret the statute, as to a proceeding under the power of sale, otherwise than it is interpreted as to a suit or action, would be placing a construction thereon not intended or justified.''

It is unnecessary further to extend consideration of this contention of defendant in error. It appears from the record proper, including the facts found by the trial court, that the judgment rendered was not authorized. According to the findings of the trial court, no actual payments had ever been made upon the judgment of April 19, 1913, and, when special execution was ordered on March 23, 1923, said judgment was still a live judgment. Said lots could lawfully be sold under the special execution and the levy thereunder when the sheriff and plaintiff in error were enjoined from making such sale. It therefore becomes unnecessary to consider other contentions made by plaintiff in error as to the effect of Laws of 1919, page 221, upon the validity of said judgment of April 19, 1913, or its contention that the petition of defendant in error stated no cause of action in other respects.

The judgment is reversed and the cause remanded. All concur.